UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| REBECCA BARRINGTON,<br><br>　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>STATE OF NEVADA, *et al.*,<br><br>　　　　　　　　　　Defendants. | Case No. 3:17-cv-00150-MMD-WGC<br><br>**REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Plaintiff's Application to Proceed In Forma Pauperis (IFP) (ECF No. 1) and pro se Complaint (ECF No. 1-1).

## I. IFP APPLICATION

A person may be granted permission to proceed IFP if the person "submits an affidavit that includes a statement of all assets such [person] possesses [and] that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress." 28 U.S.C. § 1915(a)(1); *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) (en banc) (stating that 28 U.S.C. § 1915 applies to all actions filed IFP, not just prisoner actions).

In addition, the Local Rules of Practice for the District of Nevada provide: "Any person who is unable to prepay the fees in a civil case may apply to the court for authority to proceed [IFP]. The application must be made on the form provided by the court and must include a financial affidavit disclosing the applicant's income, assets, expenses, and liabilities." LSR 1-1.

"'[T]he supporting affidavits [must] state the facts as to [the] affiant's poverty with some particularity, definiteness and certainty.'" *U.S. v. McQuade*, 647 F.2d 938, 940 (9th Cir. 1981) (quoting *Jefferson v. United States*, 277 F.2d 723, 725 (9th Cir. 1960)). A litigant need not "be absolutely destitute to enjoy the benefits of the statute." *Adkins v. E.I. Du Pont de Nemours & Co.,* 335 U.S. 331, 339 (1948).

A review of the application to proceed IFP reveals Plaintiff cannot pay the filing fee; therefore, the application should be granted.

## II. SCREENING

### A. Standard

"The court shall dismiss the case at any time if the court determines that … the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). This provision applies to all actions filed IFP, whether or not the plaintiff is incarcerated. *See Lopez*, 203 F.3d at 1129; *see also Calhoun v. Stahl*, 254 F.3d 845 (9th Cir. 2001) (per curiam).

Dismissal of a complaint for failure to state a claim upon which relief may be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and 28 U.S.C. § 1915(e)(2)(B)(ii) tracks that language. Thus, when reviewing the adequacy of a complaint under 28 U.S.C. § 1915(e)(2)(B)(ii), the court applies the same standard as is applied under Rule 12(b)(6). *See Watison v. Carter,* 668 F.3d 1108, 1112 (9th Cir. 2012) ("The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim."). Review under 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000) (citation omitted).

In reviewing the complaint under this standard, the court must accept as true the allegations, construe the pleadings in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted). Allegations in pro se complaints are "held to less stringent standards than formal

pleadings drafted by lawyers[.]" *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation marks and citation omitted).

A complaint must contain more than a "formulaic recitation of the elements of a cause of action," it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain something more … than … a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* (quoting 5 C. Wright & A. Miller, Federal Practice & Procedure § 1216, at 235-36 (3d ed. 2004)). At a minimum, a plaintiff should state "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A dismissal should not be without leave to amend unless it is clear from the face of the complaint that the action is frivolous and could not be amended to state a federal claim, or the district court lacks subject matter jurisdiction over the action. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995); *O'Loughlin v. Doe*, 920 F.2d 614, 616 (9th Cir. 1990).

**B. Plaintiff's Complaint**

Plaintiff brings this action against the following defendants: State of Nevada, County of Lyon, Department of Public Safety, Nevada Highway Patrol, Dennis Osborn, Harold L. Hughes, Chase E. Walden, Erik J. Kusmerz, Nathan R. Champa, Alvin H. McNeil, Jr., Abel Ortiz, Jr., Edwin R. Kilgore, Stephe B. Rye, Matthew K. Merrill, Michael S. Fletcher, April J. Neiswonger, Cary R. Smith, Diana N. Cooper, Shanleigh A. Brethauer, Gregory J. Flores, Susan Derisa, and Doe Deputies 1, 2, 3. (ECF No. 1-1 at 1.) The Complaint contains five causes of action, with causes of action one, two, four and five labeled "trespass," and cause of action three labeled "trespass on case."

The court will now review and screen each cause of action.

**1. First Cause of Action for Trespass**

Plaintiff claims she is not a U.S. citizen, but a "non-citizen national of the united States of America, a people on the land." (ECF No. 1-1 at 3 ¶ 9.) She contends that on October 19, 2016, she was returning home from a job interview in Carson City, traveling along U.S.

Highway 50 and noticed a Nevada Highway Patrol vehicle gaining. (*Id*. ¶ 13.) Her cruise control was set to the posted speed. (*Id*.) The trooper, Walden, paced Plaintiff for a while, sped ahead, and then waited at a junction further ahead. (*Id*.) After Plaintiff turned at the junction, Walden began to follow her and initiated a traffic stop at approximately 4:30 p.m. (*Id*.) Plaintiff avers that "[a]s a means to readily differentiate [her] status as a 'traveler' operating a private 'automobile' and not a 'driver' of a 'motor vehicle', [she] affixed a 'violation warning notice' sign to both the front and rear of claimant's private 'automobile' where 'drivers' typically display a 'license plate.'" (*Id*. ¶ 14.)

While Walden was preparing to exit his vehicle, Plaintiff cracked her window and stuck out a pre-printed card with a "written declaration" "preserving" her rights, and invoking the Fourth, Fifth, and Sixth Amendments. (*Id*. ¶ 15.) Walden refused to accept the card. (*Id*.) Walden asked Plaintiff to open the window so he could hear her, but in fear of her safety, Plaintiff stated that the window would remain closed. (*Id*.) Plaintiff advised Walden she did not consent to "the detention of her right to travel" and asked to speak with Walden's supervisor. (*Id*. at 4 ¶ 17.) Walden asked for her driver's license, registration and proof of insurance. (*Id*. ¶ 18.) Plaintiff did not respond, and awaited Walden's supervisor. (*Id*.) Walden asked what the probable cause was for the stop, and Walden responded: "fictitious registration." (*Id*. ¶ 20.) Plaintiff told him the stop was unlawful. (*Id*. ¶ 21.) Walden called the Lyon County Sheriff's Office for "backup," and Plaintiff again asked for Walden's supervisor. (*Id*. ¶ 23.) Plaintiff eventually produced her driver's license and displayed it against the window, and she claims that when Walden "threat[ened]" her, she handed the license to Walden. (*Id*. ¶ 25.)

Two deputies from the Lyon County Sheriff's Office arrived on scene: Kusmerz and Champa. (*Id*. ¶ 26.) Plaintiff saw Champa holding a screwdriver and initially feared he might use it to break Plaintiff's window to forcibly extract her (*Id*. ¶ 27.) Walden then examined and recorded the VIN number of Plaintiff's vehicle (which she claims was done without her consent). (*Id*. ¶ 28.) Walden went to his vehicle and then returned to Plaintiff's vehicle with a citation, which she claims was dated September 19 instead of the correct date of October 19. (*Id*. ¶ 29.) Plaintiff opened the window far enough to accommodate the electronic citation device and

signed (she claims she did so under duress). (*Id*. at 5 ¶ 30.) Walden compared the signature to the one on her license and asked her to sign again as they apparently did not match, allegedly threatening incarceration and seizure of the vehicle. (*Id*. ¶ 31.) Champa and Walden took a photo of Plaintiff's "violation warning sign." (*Id*. ¶ 32.)

On December 20, 2016, Plaintiff received mail from Merrill containing "discovery" materials consisting of two DVDs. (*Id*. ¶ 33.) From the video, she discovered that Walden and Champa were going to remove the warning sign but then decided to take a photo of it. (*Id*. ¶ 33.) Plaintiff claims that Walden falsely swore in an affidavit that there was probable cause to detain Plaintiff. (*Id*. ¶ 36.)

Insofar as Plaintiff claims there was no probable cause for the stop, the court finds Plaintiff fails to state a claim. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend IV. A traffic stop is a seizure within the meaning of the Fourth Amendment. *See Delaware v. Prouse*, 440 U.S. 648, 653 (1979). An officer need only have reasonable suspicion to justify the seizure. *See United States v. Lopez-Soto*, 205 F.3d 1101, 1104-05 (9th Cir. 2000) (reasonable suspicion is enough to support an investigatory traffic stop under the Fourth Amendment). This requires "'specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity.'" *Id.* (quoting *United States v. Michael R.*, 90 F.3d 340, 346 (9th Cir. 1996)).

Here, Plaintiff admits that she placed a "warning violation notice" where her license plate would otherwise appear. Nevada law requires vehicles to display front and rear license plates (except for a motorcycle, moped, or motor vehicle being transported by a licensed vehicle transporter). *See* Nev. Rev. Stat. 482.275(1). Nevada law likewise requires motor vehicles to be registered. *See* Nev. Rev. Stat. 482.205. Plaintiff admits that when she asked why she was stopped, Walden told her it was for "fictitious registration." Therefore, she acknowledges Walden had reasonable suspicion to justify the stop. Plaintiff's attempt to get around the law by asserting she was not driving a "motor vehicle" is unavailing. A "motor vehicle" is defined in

Nevada as "every vehicle as defined in NRS 482.135 which is self-propelled." *See* Nev. Rev. Stat. 482.075. A "vehicle" is "every device in, upon or by which any person or property is or may be transported or drawn upon a public highway" with certain exceptions not applicable here. *See* Nev. Rev. Stat. 482.135. This would apply to the vehicle Plaintiff admits she was operating on Highway 50.

If Plaintiff is claiming an unlawful arrest, she also fails to state a viable claim. "Under the Fourth Amendment, a warrantless arrest requires probable cause," which "exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has or is being committed by the person being arrested." *United States v. Lopez,* 482 F.3d 1067, 1072 (9th Cir. 2007). Plaintiff admits that she put a "warning violation notice" in the place where her license plate should appear. Therefore, the officer had reason to believe she had committed an offense.

Next, the court finds Plaintiff fails to state a claim that her privacy rights were violated under the Fourth Amendment either by Walden's conduct in taking down her VIN number, or in taking a photograph of her "violation warning notice" placed where a license plate would normally appear. There is no reasonable expectation of privacy in these items; therefore, there was no Fourth Amendment violation. *See New York v. Class*, 475 U.S. 106, 113 (1986) ("[T]he VIN plays an important part in the pervasive regulation by the government of the automobile. A motorist must surely expect that such regulation will on occasion require the State to determine the VIN of his or her vehicle, and the individual's reasonable expectation of privacy in the VIN is thereby diminished. This is especially true in the case of a driver who has committed a traffic violation. … In addition, it is unreasonable to have an expectation of privacy in an object required by law to be located in a place ordinarily in plain view from the exterior of the automobile."); *United States v. Diaz-Castaneda*, 494 F.3d 1146, 1151 (9th Cir. 2007) ("people do not have a subjective expectation of privacy in their license plates, and … even if they did, this expectation would not be one that society is prepared to recognize as reasonable. … Licenses plates are located on a vehicle's exterior, in plain view of all passersby, and are specifically intended to convey information about a vehicle to law enforcement authorities,

among others.").

In sum, Plaintiff states no viable claim for relief in her first cause of action.

**2. Second Cause of Action for Trespass**

On October 21, 2016, Plaintiff appeared in court, and contends this was under duress. (*Id*. at 6 ¶ 39.) Plaintiff asked for the court's and Fletcher's jurisdiction, but Fletcher refused to respond at first, and then stated it was "Walker River Justice Court," which Plaintiff claims is a "fictitious jurisdiction." (*Id*. at 6 ¶ 41.) Plaintiff goes on to allege that the Constitution does not permit states to grant "titles of nobility," and that as such, Fletcher was required to register with the federal government as a foreign agent. (*Id*. ¶¶ 42-45.)

Plaintiff asked for the nature of the charges. (*Id*. ¶ 48.) Plaintiff was subsequently asked to enter a plea, and she claims that Fletcher "entered a false statement on the inferior court's record claiming claimant had entered a plea of 'not guilty.'" (*Id*. at 6-7 ¶ 49.) Plaintiff avers that Fletcher was acting in conflict by advocating for Plaintiff while presiding on the bench. (*Id*. ¶ 50.)

It did not violate Plaintiff's constitutional rights to require her to appear in court for a traffic violation. In addition, Plaintiff's arguments that the justice court and its judicial officer lacked jurisdiction and are foreign agents are simply unsupported by the law. Nevada's justice courts are limited jurisdiction courts handling certain matters, and justices of the peace preside over traffic cases. *See* Nev. Rev. Stat. 1.010, 4.010, *et. seq*., 4.370.

Plaintiff's claim that her rights were violated when a not-guilty plea was entered on her behalf does not give rise to a claim. In fact, the Nevada Rules of Criminal Procedure (and the Federal Rules of Criminal Procedure) instruct the court to enter a plea of not guilty if a defendant refuses to plead. *See* Nev. Rev. Stat. 174.035(6), Fed. R. Crim. P. 11(a)(4).

Plaintiff fails to state any claim for relief under the second cause of action.

**3. Third Cause of Action for Trespass on Case**

Plaintiff was back in court on December 1, 2016. Merrill offered to charge Plaintiff with a lesser charge, and Plaintiff did not accept, but again challenged the court's jurisdiction. (*Id.* at 7 ¶¶ 53-54.) Fletcher found her in contempt and ordered Smith to place Plaintiff under arrest and

take her to the Lyon County jail. (Id. ¶ 55.) Plaintiff again claims that Fletcher provided no evidence of his jurisdiction. (Id. ¶ 56.) Merrill then asked that the case be scheduled for trial. (*Id.* ¶ 57.) Plaintiff asserts that Merrill is a foreign agent required to be registered. (*Id.*).

Again, Plaintiff's claim that the justice of the peace was without jurisdiction is unsupported by the law, and there is no legal support for Plaintiff's claim that Merrill (who was presumably a prosecutor) was required to register as a foreign agent. Insofar as she is alleging that the court was without power to hold her in contempt, she is incorrect. Nevada Revised Statute 22.010(1) deems "[d]isorderly, contemptuous or insolent behavior toward the judge while the judge is holding court" as contempt. "A breach of the peace, boisterous conduct or violent disturbance in the presence of the court … tending to interrupt the due course of the trial or other judicial proceeding" is also considered contempt. Nev. Rev. Stat. 22.010(2). Disobedience to an order, rule or process issued by the court will also subject a person to contempt. Nev. Rev. Stat. 22.010(3). When the contempt is committed in the presence of the court, it may be punished summarily. Nev. Rev. Stat. 22.030(1).

Therefore, Plaintiff fails to state a colorable claim for relief under the third cause of action.

**4. Fourth Cause of Action for Trespass**

On December 1, 2016, Plaintiff alleges that she was imprisoned for five days. (*Id*. at 7 ¶ 59.) Plaintiff claims this was done without jurisdiction. (*Id*.)

Plaintiff's claim that the court had no jurisdiction is unsupported by the law.

She contends she was not able to use the bathroom because of a lack of privacy, as she was in a holding cell in view of male prisoners and male and female guards. (*Id*. ¶¶ 60-61.) She says that this occurred for five to seven hours. (*Id*. ¶ 62.)

There are limited privacy rights in prison, although pretrial detainees may have greater rights than convicted prisoners. *See Byrd v. Maricopa County Board of Supervisors*, 845 F.3d 919, 922 (9th Cir. 2017) (citations omitted). That being said, the Ninth Circuit has foreclosed claims where cross-gender surveillance of showers was "infrequent and irregular," and Plaintiff alleges that she did not use the restroom so nothing was observed, and she was only in this intake

cell for a period of five to seven hours. *See id*. (citing *Grummett v. Rushen*, 779 F.2d 491, 495 (9th Cir. 1985). Therefore, she does not state a claim for violation of the Fourth Amendment based on these facts.

At that point, she alleges that two female deputies, Cooper and Brethauer, removed her from the holding cell for booking. (*Id*. at 8 ¶ 63.) She was ordered into a room and told to remove all clothing, and she began to sob and shake uncontrollably. (*Id*.) She was then ordered to insert her fingers between her lips and gums, manipulate her ears, shake out her hair. (*Id*.) She was issued prison clothing and taken for finger printing. (*Id*. ¶ 64.)

The Supreme Court has stated that "[c]orrectional officials have a legitimate interest, indeed a responsibility, to ensure that jails are not made less secure by reason of what new detainees may carry in on their bodies." *Florence v. Board of Chosen Freeholders of County of Burlington,* 566 U.S. 318, 322 (2012). In *Bell v. Wolfish*, the Supreme Court upheld a search policy that required pretrial detainees "to expose their body cavities for visual inspection as a part of a strip search conducted after every contact visit with a person from outside the institution." *Id*. at 558. In Florence, the Supreme Court stated that "[c]orrectional officials have a significant interest in conducting a thorough search as a standard part of the intake process" for "disease, gang affiliation and contraband[.]" *Florence*, 566 U.S. at 330, 333. Search procedures requiring detainees to lift their genitals and cough in a squatting position have been upheld. *Id*. at 334. Accordingly, the court finds that Plaintiff's allegations of a strip search by officers of the same gender do not give rise to a constitutional violation.

Plaintiff was then taken to a women's cell block and assigned to share a cell with a "habitual meth user in her early twenties." (*Id*. ¶ 65.) The cellmate learned Plaintiff was fasting and did not intend to eat jail food, and coerced Plaintiff into accepting the meals from guards and surrendering it to the cellmate. (*Id*.)

There are no facts suggesting the jail or its employees had any knowledge or control over the cellmate's actions in taking Plaintiff's food, which Plaintiff admits she did not intend to eat.

Plaintiff then asserts that the jail was very hard and cold. (*Id*. ¶ 66.) On the fourth night of her confinement, she contends all female inmates were taken to a large, frigid room, while the guards inspected the cell block for contraband. (*Id*.) Plaintiff claims she developed the shivers, though none of the other inmates were similarly affected. (*Id*.)

"Inmates who sue prison officials for injuries suffered while in custody may do so under the Eighth Amendments Cruel and Unusual Punishment Clause or, if not yet convicted, under the Fourth Amendment's Due Process Clause." *Castro v. County of Los Angeles*, 833 F.3d 1060, 1067-68 (9th Cir. 2016) (en banc), *cert. denied,* 137 S.Ct. 831 (Jan. 23, 2017) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979) (holding that, under the Due Process Clause, a detainee may not be punished prior to conviction)). "Under both clauses, the plaintiff must show that the prison officials acted with 'deliberate indifference.'" (*Id*.) The Eighth Amendment standard for deliberate indifference for convicted prisoners requires an objective and subjective showing. *Id*. First, the risk posed to the prisoner must be, objectively speaking, sufficiently serious. *Farmer v. Brennan*, 511 U.S. 825, 834 (citation omitted). Second, the prison official must subjectively "know of and disregard an excessive risk to inmate health or safety." *Id*. at 837. "In other words, the official must demonstrate a *subjective awareness* of the risk of harm." *Castro*, 833 F.3d at 1068 (internal citation and quotation marks omitted).

With respect to pretrial detainees, however, the Ninth Circuit previously applied the Eighth Amendment's deliberate indifference standard to claims brought by pretrial detainees under the Fourteenth Amendment. *See id*. In *Kingsley v. Hendrickson*, 135 S.Ct. 2466 (2015), the Supreme Court held that the standard for determining an excessive force claim by a pretrial detainee is an objective inquiry. In *Castro*, the Ninth Circuit said that a failure to protect claim brought by a pretrial detainee also involves an objective inquiry. While neither the Supreme Court nor the Ninth Circuit have yet to espouse what standard applies to conditions of confinement or medical care claims of pretrial detainees, the court views the Supreme Court's language in *Kingsley* as well as the Ninth Circuit's language in *Castro* as suggesting that an objective standard would apply to these claims as well.

Nevertheless, under either standard, Plaintiff fails to state a claim. Plaintiff's allegations acknowledge that the room was not, objectively speaking, unduly cold, as none of the other inmates were affected. Nor does she allege that the officers knew of her sensitivity to the cold and disregarded her complaints. Instead, she alleges that she was placed in a room that felt unduly cold to her for a relatively brief period of time. This does not amount to a constitutional claim.

Plaintiff goes on to allege that she fasted for six days in confinement and became weak and light-headed, but ate the meal served at lunch that day since she anticipated release. (ECF No. 1-1 ¶ 67.) She claims that within an hour she developed a severe sore throat. (*Id*.) It resolved within twenty-four hours, and she suspects it was an allergic reaction to the food. (*Id*.) She states no constitutional claims based on her suspicion that a food allergy resulted from consuming a meal provided by the jail.

Plaintiff then states that she asked two deputies what time she was scheduled for release and she claims one rudely told her he did not know, and the other one toyed with her by saying "weekends don't count." (*Id*. ¶¶ 68-69.) She was collected for release a few hours later. (*Id*. ¶ 69.) These allegations do not give rise to any claim.

She then avers that she was taken to a room and asked about her property, which was scattered around and an item of clothing had an ink stain. (*Id*. ¶ 70.) The fact that her property was in a purported state of disarray does not give rise to any federal claim.

In sum, Plaintiff fails to state any claim upon which relief may be granted in the fourth cause of action.

**5. Fifth Cause of Action for Trespass**

Plaintiff alleges that she was forced to appear in court on December 22, 2016. (*Id*. ¶ 75.) She explained to Deriso that Fletcher had entered a false plea of "not guilty" without her consent. (*Id*. ¶ 76.) Deriso explained to her that if a person does not enter a plea, a plea of not guilty is entered, and the matter is set for trial. (*Id*. ¶ 77.) Plaintiff contends that this is an admission of perjury. (*Id*.) Plaintiff avers that Deriso is a member of the bar and is required to register as a foreign agent. (*Id*. ¶ 79.) She includes an allegation that the defendants are running a

"closed union" shop in violation of the Smith Act. (*Id*. ¶ 81.)

Again, the fact that a not guilty plea was entered when Plaintiff refused to enter a plea does not give rise to a constitutional violation. *See* Nev. Rev. Stat. 174.035(6), Fed. R. Crim. P. 11(a)(4).

In addition, there is no legal validity to Plaintiff's claim that members of the bar must register as foreign agents.

Finally, it is not clear what Plaintiff means by her allegation that the defendants are running "a closed union shop" in violation of the Smith Act, but there are no *facts* that support a claim under the Smith Act, 18 U.S.C. § 2385, which among other things, criminalized advocating the overthrow of the government by force or violence.

**6. Conclusion**

Plaintiff fails to state a claim upon which relief may be granted, and the court finds that amendment would be futile. Therefore, the Complaint should be dismissed with prejudice.

### III. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order as follows:

(1) **GRANTING** Plaintiff's IFP application (ECF No. 1);

(2) Directing the Clerk to **FILE** the Complaint (ECF No. 1-1); and

(3) **DISMISSING** the Complaint **WITH PREJUDICE**.

Plaintiff should be aware of the following:

1. That she may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

///

///

///

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

DATED: June 27, 2017.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE